# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| VALERIE DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12 C 8592 |
| | ) | |
| SUSAN A. LOFTON, in her individual | ) | |
| capacity and in her official capacity as | ) | |
| Principal of Nicolas Senn High School, | ) | |
| and CHICAGO PUBLIC SCHOOLS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On February 23, 2013, Plaintiff Valerie Douglas ("Douglas") filed a six-count Amended

Complaint against Defendants Susan Lofton ("Lofton"), in her individual capacity and official

capacity as Principal of Nicolas Senn High School, and Chicago Public Schools ("the Board")[1]

(collectively, "Defendants"). (R. 21, Amend. Compl.) In Counts I and II, Ms. Douglas alleges

that Defendants interfered with her rights and engaged in retaliation under the Family Medical

Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* In Counts III and V, she claims that

Defendants defamed her and intentionally inflicted emotional distress upon her. In Count IV,

she alleges that Lofton assaulted her. In Count VI, she alleges that Defendants subjected her to

differential treatment from others similarly situated to her in violation of the Fourteenth

Amendment. On February 28, 2013, Defendants moved pursuant to Federal Rule of Civil

---

[1] Although Ms. Lofton states that she sues Chicago Public Schools, the Illinois School
Code states that the Board of Education of the City of Chicago is the legal name of the entity
which maintains the school system and may be sued. (R. 25, Mot. at 3.)

Procedure ("Rule") 12(b)(6) to dismiss Counts I, III, IV and V of Ms. Douglas' Amended

Complaint, and pursuant to Rule 12(f) to strike paragraphs 16-23, 33-37, 41-59 and Exhibits A,

B, C, E, M, and N as redundant, immaterial, impertinent, or scandalous matter.  (R. 25, Mot.)

Defendants do not contest Ms. Douglas' claims in Count II (FMLA retaliation) or Count VI

(Fourteenth Amendment).  For the following reasons, the Court grants Defendants' motion in

part and denies it in part.

## BACKGROUND

Valerie Douglas has been a teacher with Chicago Public Schools for over 25 years.

(Amend. Compl. ¶ 1.)  Ms. Douglas previously taught at Nicolas Senn High School.  Ms. Susan

Lofton became principal of Nicolas Senn High School in the second semester of the 2009-2010

school year.  (*Id*. ¶ 7.)  According to Ms. Douglas, she was eligible for FMLA protections

because of a serious health condition.  (*Id*. ¶¶ 61, 72.)  Specifically, she has been diagnosed with

post traumatic stress disorder and severe depression.  (*Id*. ¶ 72.)  Additionally, on April 27, 2011,

while at a meeting, Ms. Lofton "suddenly and aggressively moved across the table towards" Ms.

Douglas.  (*Id*. ¶ 95.)  As a result, Ms. Douglas "developed a severe headache." (*Id*. ¶ 98.)  She

informed office staff that she needed to leave early and completed the required documents.  (*Id*. ¶

99.)  A doctor diagnosed her as having had a heart attack.  (*Id*. ¶ 100.)

Because of her health condition, Ms. Douglas took leave from January 25, 2011 through

March 2011, from April 27, 2011 through May 9, 2011, and from September 14, 2011 through

September 23, 2011.  (*Id*. ¶¶ 63, 64, 68.)  Ms. Lofton requested that the September days "be

changed to suspension days" after requesting on July 29, 2011 that Ms. Douglas be suspended

for certain days.  (*Id*. ¶¶ 66, 67.)   Ms. Douglas also took leave from late September through November 7, 2011 and was under a doctor's care.  (*Id*. ¶ 68.)

On May 9, 2011, the day Ms. Douglas returned from one of her leaves of absence, Ms. Lofton provided her "with a list of charges which could result in disciplinary action 'up to and including' dismissal."  (*Id*. ¶ 78.)  The charges included a complaint from an anonymous student that Ms. Douglas had failed to input attendance grades for students in a class and that Ms. Douglas had left the building without permission on April 27, 2011.  (*Id*.)  Ms. Lofton disciplined Ms. Douglas for her failure to input grades during her FMLA leave and for leaving the building.  (*Id*. ¶ 87, Ex. W.)  Specifically, Ms. Lofton suspended Ms. Douglas.  (*Id*.)  According to Ms. Douglas, Ms. Lofton also "taunted [her] in hushed whispers" and subjected her "to a campaign of harassment."  (*Id*. ¶¶ 101, 108.)

## LEGAL STANDARD

### I.    12(b)(6) Motion to Dismiss Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint.  *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted).  Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555.  Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

## II.    12(f) Motion to Strike Standard

"Rule 12(f) provides that a district court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.,* 554 F.3d 1133, 1141 (7th Cir. 2009) (quoting Fed. R. Civ. P. 12(f)). Motions to strike are appropriate if they serve to expedite litigation. *See Heller Fin., Inc. v. Midwhey Powder,* 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken if matter bears no possible relation to controversy). District courts have considerable discretion to strike allegations under Rule 12(f). *See Delta,* 554 F.3d at 1141-42.

## ANALYSIS

Defendants seek to dismiss Counts I, III, IV, and V. They also seek to strike Paragraphs 16-23, 33-37, and 41-59, and Exhibits A, B, C, E, M, and N. The Court addresses each argument in turn.

## I.    Count I - Interference In Violation Of the FLMA

The "FMLA entitles an employee to twelve weeks of leave every twelve-month period if she is afflicted with 'a serious health condition' which renders her unable to perform her job." *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009) (quoting 29 U.S.C. § 2612(a)(1)(D)). The

FMLA "further provides that employers may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act].'" *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011) (citation omitted). To prevail on her FMLA interference claim, Ms. Douglas must show that: (1) she was eligible for FMLA protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 780 (7th Cir. 2013). Defendants argue that Plaintiff has not pled sufficient factual allegations to support her claim for FLMA interference. Specifically, they argue that she has "failed to allege that the Board denied her requests for FMLA leave . . . [and] has pled not facts in support of her claim that the Board interfered with her FMLA rights." (Mot. at 4.) Indeed, Ms. Douglas has failed to specifically identify any manner in which Defendants denied her any FMLA benefits.

"An interference claim requires proof that the employer denied the employee FMLA rights to which she was entitled." *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012). Ms. Douglas does not allege that Defendants denied her any requested FMLA time off. *See, e.g., id.* at 827 (finding insufficient evidence that the defendant "did anything to deny or otherwise interfere with [plaintiff's] right to FMLA benefits" in part because "at no time did defendant decline plaintiff's request for leave"). In fact, her allegations are the opposite, as she states that she took FMLA time off on multiple occasions. Ms. Douglas alleges that she "took FMLA leave from January 25, 2011 through March 2011, approximately thirty (30) days." (Amend. Compl. ¶ 63.) She also "took FMLA leave from April 27, 2011 through May 9, 2011," "[f]rom September 14, 2011 through September 23, 2011," and "from late September through

November 7, 2011."  (Amend. Compl. ¶¶ 64, 67, 68.)  Her Amended Complaint does not allege

that Defendants denied any request she made for FMLA time off.  In her response, Ms. Douglas

clarifies that she seeks an FMLA claim based on something beyond denial of time off.  (Resp. at

11-13.)

Specifically, Ms. Douglas argues that "one can make a reasonable inference that the

actions were taken to discourage the use of FMLA rights" based on the statements made by a

consulting teacher[2] that she "may be entitled to take FMLA leave but she is not entitled to the

respect of her colleagues who have to pick up her slack."  (Resp. at 12; Amend. Compl. ¶ 88.)

Even viewing the facts in the light most favorable to Plaintiff, there is no reasonable inference,

based on a colleague's view that Ms. Douglas did not deserve respect, that Defendants took any

actions to deny Ms. Douglas her benefits.  Indeed, Ms. Douglas provides no legal support for the

contention that lack of respect, by someone other than Defendants no less, is actionable under

the FMLA.

In her response, she also makes other vague arguments that Defendants interfered with

her rights by (1) retroactively changing policies "in an attempt to discipline Douglas for time

when she was on FMLA leave" and (2) disciplining her "allegedly due to the fact that [she] had

not completed electronic data entries for the period" of time when she was on FMLA leave.

(Resp. at 12-13.)  She does not cite to any law or to any specific allegations as part of these

arguments.  Rather, she states that she has offered documentary evidence to support these

theories.  As explained below, both arguments fail.

---

[2] Ms. Lofton assigned Ms. Douglas a "consulting teacher," Todd Pytel, to demonstrate
teaching strategies as part of the school's "E3 process," which the school employed to give
teachers a chance to improve before terminating them.

First, regarding Ms. Douglas' claim that Defendants attempted to discipline her by changing a policy, she fails to sufficiently allege what the policy stated, what changes were made, or how that policy applied to her. Notably, in her response, she refers to "exhibits"[3] which she claims show that Ms. Lofton "retroactively changed policies in an attempt to discipline Douglas." (Resp. at 12.) She fails, however, to cite to any specific exhibits. Moreover, the exhibits which she references in Count I of her Amended Complaint, Exhibits E, G, and U, do not assert any such facts. (Amend. Compl. ¶¶ 65, 74. 75.) Exhibit U, for example, is a letter detailing the dates of, and reasons for, her nine-day suspension. (R. 21-2, Ex. U.) Exhibit E appears to be teacher evaluations for other teachers whose names have been redacted. (R. 21, Ex. E.) Exhibit G is an email from Ms. Douglas to an unknown recipient explaining that she is leaving school early. (R. 21-1, Ex. G.) Exhibit F, which Ms. Douglas does not even cite in Count I, is perhaps the most relevant exhibit as it is the Teacher Evaluation Plan and Handbook of Procedures. The Court on its own, however, cannot determine to which particular changes within this Handbook Ms. Douglas might be referring. Indeed, none of these exhibits support any allegation that Defendants made a specific change in any policy or, more significantly, that they disciplined Ms. Douglas in a manner to interfere with her rights under the FMLA.

---

[3] Under Rule 10(c), "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P.10(c); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Indeed, the Seventh Circuit has taken a "broader view of documents that be considered on a motion to dismiss," beyond the narrow traditional definition of "written instrument," "noting that a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, No. 09-3985, 2013 WL 1338038, at *1 (7th Cir. Apr. 4, 2013) (citing Black's Law Dictionary 869 (9th ed. 2009)). The Court, therefore, may consider the documents which Ms. Douglas attached as exhibits to her Amended Complaint, referenced in her Complaint, and relied on to support her claims. *Id.*

Moreover, Ms. Douglas' own allegations do not support any such conclusion as she merely argues that Ms. Lofton "attempted" to discipline her and does not allege that Ms. Lofton actually disciplined her or interfered with her rights. (Resp. at 13.) Additionally, Ms. Douglas alleges that the change in policy occurred "after [she] was disciplined" and therefore could not have been the cause of her discipline. (Amend. Compl. ¶ 81.) Notably, Ms. Douglas also has alleged that she "has never been the subject of any serious disciplinary proceedings or disciplinary actions" during her over twenty-five years teaching for the Chicago Public Schools. (*Id.* ¶ 1.) Any discipline she received, therefore, was not "serious" by her own accord.

Second, the only specific disciplinary action Ms. Douglas references is her suspension. Indeed, this is the only potential basis for an interference claim which she specifically included in Count I of the Amended Complaint. (*Id.* ¶¶ 65-67.) This suspension, however, does not support a claim for interference. According to the letter she attached as Exhibit U, dated July 29, 2011, Chicago Public Schools suspended her for two days in September, October, November, and December each. (R. 21-2, Ex. U.) Plaintiff, therefore, received this suspension approximately four months after her first leave of absence, which ended in March 2011, and two and a half months after the second FMLA leave, which ended May 9, 2011.[4] (Amend. Compl. ¶¶ 63, 64.) Moreover, she took FMLA leave after receiving this notice of suspension, specifically from "September 14, 2011 through September 23, 2011" and "from late September through November 7, 2011." (Amend. Compl. ¶¶ 67, 68.) She has, therefore, not sufficiently alleged that Defendants took actions which interfered with her rights or discouraged her from exercising

---

[4] Notably, in their Rule 12(b)(6) motion to dismiss, Defendants have not challenged Ms. Douglas' FMLA retaliation claim, which the Court does not assess here.

her rights, even when making all reasonable inferences in her favor. *See, e.g., Nicholson*, 690

F.3d at 827 (finding that the plaintiff had not asserted a claim for interference based on

termination when defendant terminated plaintiff two months after granting her leave to request

and before she made additional requests). Indeed, at most Ms. Douglas has argued that it is

*possible* for a plaintiff to recover under the FMLA for a denial of benefits other than mere denial

of time off. She has not, however, sufficiently stated such a claim herself in her Amended

Complaint under Rule 8(a) of the Federal Rules of Civil Procedure.

Additionally, even a liberal reading of Ms. Douglas' Amended Complaint does not save

her claim. *See Gomez v. Randle,* 680 F.3d 859, 864 (7th Cir. 2012) (courts must construe pro se

pleadings liberally). Ms. Douglas, for example, alleges that Defendants discharged her from her

teaching position at Nicolas Senn High School, yet does not connect this discharge with her

interference claim. Moreover, although "termination may constitute a denial of benefits," Ms.

Douglas does not specifically allege why Defendants discharged her or when this "constructive

discharge" occurred. *Nicholson*, 690 F.3d at 827; (Amend. Compl. ¶ 38.) Rather, she contends

that Defendants discharged her along with at least eight other teachers whom Defendants placed

in the "E3 process" to complete a remediation plan. (Amend. Compl. ¶¶ 38-40.) She also

alleges – again not within her interference claim in the Amended Complaint – that Ms. Lofton

harassed her. (*Id.* ¶¶ 101-102.) "[H]arassment alone does not establish an interference claim,

however, because to establish an interference claim Simpson must show that defendants denied

her a right under the FMLA." *See Simpson v. Off. of Chief Judge of Circuit Ct. of Will Cnty., Ill.*,

520 F. Supp. 2d 998, 1009 n. 10 (N.D. Ill. 2007). As discussed above, however, Ms. Douglas

has not alleged any right which Defendants denied her.  The Court, therefore, dismisses Count I, without prejudice.

## II.    Count III - Defamation of Character

Defendants argue that the Court should dismiss Count III for two reasons: (1) the Tort Immunity Act immunizes Defendants from defamation claims, and (2) the statements at issue are privileged.  (Mot. at 5-7.)   Defendants do not contest the factual sufficiency of Ms. Douglas' defamation claim.  (Reply at 8.)  For the following reasons, the Court dismisses Count III with prejudice.

### A.    Tort Immunity Act

Defendants claim that the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq*. ("Tort Immunity Act"), immunizes them against Ms. Douglas' defamation claim.  (Mot. at 5.)  Specifically, Section 2-107 of the Tort Immunity Act immunizes a "local public entity," which includes the Board, for

> injury caused by any action of its employees that is libelous or slanderous or for any provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material."  745 ILCS 10/2-107.

Defendants also claim that Section 2-210 immunizes Ms. Lofton from the defamation claim. (Mot. at 5.)  Section 2-210 states:

> A public employee acting in the scope of his employment is not liable for an injury caused by the negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material.

745 ILCS 10/2-210.  Ms. Douglas does not contest that the Tort Immunity Act applies to Defendants, but instead argues that the Tort Immunity Act (1) does not immunize Defendants against injunctive relief, and (2) does not immunize willful and wanton conduct.  (Resp. at 3.)

### 1.    Injunctive Relief

Regarding injunctive relief, Ms. Douglas has not sought and cannot seek injunctive relief for defamation, contrary to her assertion in her response.  In her Amended Complaint, she specifically seeks injunctive relief regarding her FMLA claims.  (Amend. Compl. at 17.)  She also generally seeks to enjoin Defendants from further unlawful conduct, though does not specify to what conduct she refers.  (*Id*.)  Ms. Douglas' defamation claim, however, stems from alleged defamatory statements which Ms. Lofton made while Ms. Douglas taught at Nicolas Senn High School.  (*Id*. ¶¶ 90-92.)  Specifically, Ms. Douglas alleges that Ms. Lofton made statements in a Notice of Pre-Disciplinary Hearing and in observations conducted during the 2011-2012 school year.  (*Id*.)  Ms. Douglas, however, no longer teaches at Nicolas Senn High School.  Ms. Lofton's alleged defamation, therefore, is in the past and there is no threat of it continuing.  *See, e.g., City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) ("past exposure to illegal conduct does not in itself show a present case for injunctive relief"); *see also Scherr v. Marriott Int'l., Inc.,* 703 F.3d 1069, 1074  (7th Cir. 2013) (stating that "to establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights").  Ms. Douglas cannot seek injunctive relief for this completed alleged conduct.  Furthermore, even the injunctive relief Ms. Douglas claims she seeks in her response – reinstatement – does not relate to her defamation claim, but instead relate to her FMLA claims.

### 2.    Immunity

Ms. Douglas has, however, sufficiently pled "willful and wanton" conduct, which removes Ms. Lofton from the protection of Section 2-210.  The Illinois Supreme Court has stated

that Section 2-210 "'unambiguously' does not immunize" willful and wanton conduct because it "stat[es] expressly that the provided immunity applies only to conduct that is negligent." *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.* 362 Ill. Dec. 484, 973 N.E.2d 880 (Ill. 2012) (quoting *Barnett v. Zion Park Dist.*, 171 Ill. 2d 378, 391, 216 Ill. Dec. 550, 665 N.E.2d 808 (1996)). Section 2-210 of the Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Here, Ms. Douglas alleges that Ms. Lofton made the defamatory statements with "malicious intent." (Amend. Compl. ¶ 90.) Moreover, Ms. Douglas alleges that Ms. Lofton made the defamatory statements "for the purpose of terminating" her and others. (*Id.*)

Defendants do not dispute that Ms. Douglas' allegations include willful and wanton conduct, but instead argue that the Illinois Supreme Court's holding in *Jane Doe-3* does not reach the case at hand. Specifically, Defendants argue that the Supreme Court's ruling only relates to negligent misrepresentations and not to "provision of information." (R. 35, Reply at 3-5.) In *Jane Doe-3,* unlike here, the defendants sought immunity under Section 2-204 of the Tort Immunity Act. 362 Ill. Dec. at 497. It was only "[b]y way of a single footnote" that defendants in *Jane Doe-3* "ma[d]e passing mention of section 2-210 of the Tort Immunity Act" whereby they stated that the plaintiff did not plead negligent misrepresentation. *Id.* The court agreed that the plaintiff had not pled negligent misrepresentation but had pled "willful and wanton conduct, which section 2-210 unambiguously does not immunize." *Jane Doe-3*, 362 Ill. Dec. at 497 (quotations omitted). Based on this language, Defendants contend that the Illinois Supreme

Court addressed only "negligent misrepresentation" in *Jane Doe-3*. (Reply. at 5.) Defendants, therefore, urge the Court to follow a First District of Illinois Appellate Court in recognizing that "negligent" only applies to misrepresentations in Section 2-210 and not to "provision of information." (*Id.* (citing *Golberg v. Brooks*, 409 Ill. App. 3d 106, 111, 350 Ill. Dec. 601, 948 N.E.2d 1108 (Ill. App. Ct. 2011)).

Whether Section 2-210 includes an exception for willful and wanton misrepresentations and provisions of information, however, is immaterial because Ms. Douglas has pled both. (Amend. Compl. ¶¶ 90-92.) Indeed, Ms. Lofton's allegedly defamatory statements in her evaluations of Ms. Douglas and in the disciplinary notice may constitute "misrepresentations" of facts or information about Ms. Douglas or "provisions of information" about Ms. Douglas. Defendants do not provide any explanation or justification for why Ms. Douglas' allegations only constitute "provisions of information" and therefore potentially fall under the broader protections of Section 2-210, as applied by the First District court in *Goldberg*. As a result, Ms. Douglas' Amended Complaint does not establish that the Tort Immunity Act immunizes Defendants from her defamation claim.

### B. Privileged Statements

Defendants further contend that Ms. Lofton's statements are privileged and therefore protected from suit. (Mot. at 7.) "Defamatory statements are not actionable if they are protected by an absolute or conditional privilege." *Goldberg*, 409 Ill. App. 3d at 113 (citing *Zych v. Tucker*, 363 Ill. App. 3d 831, 834, 300 Ill. Dec. 561, 844 N.E.2d 1004 (2006)). Indeed, even statements that are defamatory *per se* or made with malice are not actionable if protected by an absolute privilege. *See Mauvais-Jarvis v. Wong,* No. 1-09-2578, 2013 WL 1281806, at *15 (Ill.

App. Ct. Apr. 20, 2011).  "The question of whether a privilege is absolute or conditional is a matter of law to be decided by the court."  *Goldberg*, 409 Ill. App. 3d at 113.  In Illinois, privileged statements include statements made during legislative, judicial and some quasi-judicial proceedings and other acts of State, including communications made in the discharge of a duty under express authority of law.  *Wong,* 2013 WL 1281806 at *16 (citing *Busch v. Bates*, 323 Ill. App. 3d 823, 833, 257 Ill. Dec. 558, 753 N.E.2d 1184 (2001)).  Additionally, although a plaintiff does not need to anticipate affirmative defenses, a plaintiff may plead herself out of court if she establishes the facts supporting the defense in her complaint.  *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 600 (7th Cir. 2012);  *Hollander v. Brown*, 457 F.3d 688, 691 n. 1 (7th Cir. 2006) (observing that it is "irregular" to dismiss a complaint on the basis of an affirmative defense such as the statute of limitations, unless "the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense").

Here, Ms. Lofton made the allegedly defamatory statements while reviewing and disciplining Ms. Douglas.  Under the Illinois School Code, Ms. Lofton, as Principal, is responsible for supervising, evaluating and disciplining teachers.  107 ILCS 5/34-8.1.  Ms. Lofton, therefore, allegedly defamed Ms. Douglas while discharging her express duties under Illinois law in the course of her employment as Principal.  *See, e.g., Goldberg*, 409 Ill. App. 3d at 112-13 (extending absolute privilege to statements made by teaching assistant to public school principal about school bus driver and to principal's later statements to driver's employer because they acted within the scope of their public employment); *Horwitz v. Bd. of Ed. of Avoca Sch. Dist. Num. 37*, 260 F.3d 602, 617-18 (7th Cir. 2001) (finding that absolute privilege shielded a

principal, superintendent and school board president from a defamation claim because the individuals made statements when speaking to parents within the scope of their official duties).

Ms. Douglas argues that Ms. Lofton was operating outside of the scope of her authority when she defamed Ms. Douglas. (Resp. at 5, 10.) Specifically, she argues that other statutes and the rules of professional conduct propagated by the Illinois State School Board and Chicago Public Schools' policies and procedures limited Ms. Lofton's authority. (*Id*. at 10.) She does not, however, cite to any specific statutes or rules to support her argument or explain in what way any statute or policy limited Ms. Lofton's authority. Moreover, she provides no such factual allegations in her Amended Complaint.

Ms. Douglas also argues that Ms. Lofton conducted a May 9, 2011 evaluation outside the scope of her authority, citing to the contract between the Chicago Public Schools and Chicago Teachers' Union Local 1 and Teacher Evaluation Plan and Handbook of Procedures generally. (Resp. at 5.) Not only does she not cite to any specific provision or page number of these documents, she does not even provide the Court with the contract she references. Instead, she drops a footnote stating that the contract "is a matter of public record." (Resp. at 5 n. 5; *see also* Resp. at 9.) The Court disregards such undeveloped, unsupported arguments in part because "[d]istrict courts are not obliged to scour the record looking for facts to support their arguments." *Padilla v. Bailey*, No. 09 C 8068, 2011 WL 3045991, at *2 (N.D. Ill. July 25, 2011) (citing *Cracco v. Vitran Exp., Inc*., 559 F.3d 625, 632 (7th Cir. 2009)); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument.").

Moreover, Ms. Douglas' arguments about these documents do not establish that Ms. Lofton acted outside of her authority. Specifically, she argues – without citation – that the contract and Handbook required Ms. Lofton to evaluate Ms. Douglas every other year, rather than every year, because she was previously rated excellent, and therefore she "was not subject to evaluation" in May 2011. (Resp. at 5-6.) Ms. Douglas, however, did not include the May 9, 2011 evaluation in her Amended Complaint. Rather, she has alleged that Ms. Lofton made defamatory statements in a "May 25, 2011 observation and observations conducted during the 2011-2012 school year." (Amend. Compl. ¶ 92.) The May 9, 2011 statements which Ms. Lofton cites in her Amended Complaint are contained in a disciplinary letter. As stated above, Ms. Lofton had a legal obligation to supervise, evaluate and discipline Ms. Douglas. Ms. Douglas' defamation claim against Ms. Lofton, therefore, fails as her Amended Complaint establishes that the statements were made in the scope of her employment and were privileged. *See, e.g., Hobbs v. Cappaelluti*, 899 F. Supp. 2d 738, 776-77 (N.D. Ill. 2012) (dismissing defamation claim because statements were absolutely privileged); *Corvus Grp., Inc. v. Nichols Kaster, PLLP*, No. 12 C 1269, 2012 WL 1899431, at *1 (N.D. Ill. May 24, 2012) (same). As a result, her claim against the Board fails as well because a "local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. The Court, therefore, dismisses Count III with prejudice.

### III.    Count IV - Assault

Under Illinois tort law, assault involves intentional conduct that places the plaintiff in reasonable apprehension of an imminent battery.  *See McNeil v. Carter*, 318 Ill. App. 3d 939, 944, 252 Ill. Dec. 413, 742 N.E.2d 1277 (Ill. 2001); *Parrish by Bowker v. Donahue*, 110 Ill. App. 3d 1081, 1083, 66 Ill. Dec. 860, 443 N.E.2d 786 (Ill. App. Ct. 1982); *see also Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004).  Ms. Douglas alleges that, during a meeting at Nicolas Senn High School, "Lofton suddenly and aggressively moved across the table towards Douglas . .. [and] did so intentionally to place Douglas in apprehension of an immediate harmful contact."  (Amend. Compl. ¶ 95.)  Defendants argue that Ms. Douglas has not sufficiently pled facts to support an assault claim against Ms. Lofton because she did not allege any willful or wanton conduct sufficient to establish an assault claim.  (Resp. at 7-8.)

It is unclear, however, whether the Tort Immunity Act applies to the conduct at issue here.  Defendants do not cite to any section of the Tort Immunity Act which would immunize them from this assault claim.  Defendants cite only to the provisions of the Tort Immunity Act defining "public employee" and "willful and wanton conduct."  (*Id*.)  The general immunity provision of the Tort Immunity Act, which public employees often invoke, including for assault claims, states: "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2–202.  It is not clear from the Amended Complaint that, unlike a police officer who makes physical contact with a person in the course of his law enforcement duties, for example, Ms. Lofton committed the alleged assault "in the execution or enforcement of any law." *See cf., Rhyan v. City of Waukegan,* No. 10 C 631, 2010 WL 5129736, at *2 (N.D. Ill.

Dec. 9, 2010) (denying motion to dismiss assault and battery claim against officer who allegedly forced the plaintiff to the ground and sprayed her with pepper spray when arresting her, noting that the allegations were sufficient to show willful and wanton conduct); *see also Zboralski v. Monahan*, 616 F. Supp.2d 792, 804 (N.D. Ill. 2008) (recognizing that section 2-202 did not protect all activities a police officer engages in as it "only extends to the act or omission done while in the actual execution or enforcement of a law.") (quotation omitted). Indeed, Ms. Douglas merely alleges that Ms. Lofton assaulted her during a meeting at the school. Additionally, even if Ms. Lofton was supervising or disciplining Ms. Doulgas at this meeting pursuant to Illinois School Code, some courts have concluded that sections of the Illinois School Code are not "law[s] enforced in the sense contemplated by section 2-202." *Grandalski ex rel. Grandalski v. Lyons Tp. High Sch. Dist. 204*, 305 Ill. App. 3d 1, 7, 238 Ill. Dec. 269, 711 N.E.2d 372 (Ill. App. Ct. 1999) (refusing to apply the protections of the Tort Immunity Act to a teacher supervising students pursuant to section 24-24 of the School Code); *A.R. ex rel. M.R. v. Chi. Bd. of Educ.*, 311 Ill. App.3d 29, 36, 243 Ill. Dec. 697, 724 N.E.2d 6 (Ill. App. Ct. 1999) (refusing to apply section 2-202 to conduct by the school board because the relevant section fo the School Code, which placed an affirmative duty upon the Board to maintain discipline, was "not a law enforced or executed in the sense contemplated by section 2-202 "). The Court, therefore, denies the motion to dismiss as to Count IV because the Amended Complaint does not establish that the Tort Immunity Act precludes this claim.

Ms. Douglas asserts that the Court has supplemental jurisdiction over her Illinois state claims, including this assault claim. (Amend. Compl. ¶ 3.) Although Defendants did not raise the issue, it is unclear whether Ms. Douglas' assault claim stems from the same case or

controversy as her federal claims and whether the Court should assert support supplemental jurisdiction over this and her other state law claims. *See* 28 U.S.C. § 1367; *see also Bilek v. Bank of Am., N.A.*, No. 07 C 4147, 2011 WL 830948, at *7 (N.D. Ill. Mar. 3, 2011) (declining to exercise supplemental jurisdiction over state law claims after dismissing related federal claim). The Court, therefore, directs Ms. Douglas to sufficiently outline the basis for the Court's supplemental jurisdiction over her Illinois state claims, if she files a second amended complaint pursuant to the Court's Order on her May 7, 2013 motion (R. 42). *See, e.g., RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc*., 672 F.3d 476, 479–80 (7th Cir. 2012) (discussing the presumption in favor of relinquishing supplemental jurisdiction when no federal claims remain); *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) ("When the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts."). If Ms. Douglas opts not to file a second amended complaint and instead proceeds on the Amended Complaint, the Court directs her to file a supplemental filing outlining the basis for the Court's supplemental jurisdiction on or before July 1, 2013.

Additionally, although Defendants did not raise the issue, the Court questions whether Ms. Douglas' assault claim falls within the one year statute of limitations which applies under the Tort Immunity Act. *See* 745 ILCS 10/8-101; *see also Grzanecki v. Cook Cnty. Sheriffs Police Dept*., No. 10 C 7345, 2011 WL 3610087, at *2 (N.D. Ill. Aug. 16, 2011) (finding that the plaintiff's assault and battery claim against state employee was time-barred because it was not filed within a year of the incident). Here, Ms. Douglas alleges the assault occurred on April 27, 2011, which was more than a year before Ms. Douglas filed her initial complaint on October

16, 2012.  The Court directs Ms. Douglas to consider the possible statute of limitations applicable to her claims if she files her second amended complaint.

## IV.     Count V - Intentional Infliction of Emotional Distress

To prevail on a common law intentional infliction of emotional distress claim, a plaintiff must establish that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress."  *Swearnigen–El v. Cook  Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citation omitted).  Defendants argue that Ms. Douglas has not sufficiently pled conduct that was truly "extreme and outrageous" or any willful and wanton behavior.  (Mot. at 8-9.)

"To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'"  *Id.* (citation omitted).  Mere insults, indignities, threats, or annoyances do not qualify as extreme and outrageous conduct.  *See Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 20-21, 180 Ill. Dec. 307, 607 N.E.2d 201 (Ill. 1992); *see also Duffy v. Haberkorn,* No. 1-11-0841, 2012 WL 6861596, at *4 (Ill. App. Ct. Dec. 20, 2012).  Rather, "extreme and outrageous behavior requires conduct that goes beyond all possible bounds of decency, such that a reasonable person would hear the facts and be compelled to feelings of resentment and outrage."  *Duffy v. Orlan Brook Condo. Owners' Ass'n,* 367 Ill. Dec. 341, 351, 981 N.E.2d 1069 (Ill. App. Ct. 2012).  Also, a plaintiff must establish that the behavior was "so severe that no reasonable man could be expected to endure it."  *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 276, 278 Ill. Dec. 263, 798 N.E.2d 75 (Ill. 2003).

Here, Ms. Douglas alleges that she had a heart attack caused by Ms. Lofton's alleged assault. (Amend. Compl. ¶ 100.) Ms. Douglas also claims that Ms. Lofton subjected her to a campaign of harassment and engaged in a pattern of intimidation and hostile action at least three times. (*Id.* ¶¶ 101-102.) Ms. Douglas does not specify how Ms. Lofton harassed her or what type of "hostile action" Ms. Lofton took against her. Such bare bones allegations are not sufficient to put Defendants on notice as to the conduct at issue. Ms. Douglas has offered only conclusory statements, rather than factual allegations, indicating that Ms. Lofton's conduct was so extreme and outrageous to warrant liability. Indeed, "[t]he case law is replete with claims for intentional infliction of emotional distress that were dismissed by the court at the pleadings stage for failure to allege sufficiently extreme and outrageous conduct." *Miner v. Garrity*, No. 1-10-3023, 2011 WL 10071975, at *13 (Ill. App. Ct. Jul. 29, 2011) (citing *Public Fin. Corp. v. Davis*, 66 Ill. 2d 85, 94 (1976) (debtor claimed that agents of creditor called her and visited her several times weekly over a seven-month period, called defendant multiple times at her daughter's hospital bed, and, on one home visit, called the creditor to describe defendant's household goods and refused to leave her home until her son entered); *Rudis v. National Coll. Educ.*, 191 Ill. App. 3d 1009, 1014 (Ill. App. Ct. 1989) (student brought suit against her former college and its administrators for intentional infliction of emotional distress, claiming that administrators and faculty leveled various rude and insulting accusations of academic and other misconduct against her); *Tabora v. Gottlieb Memorial Hosp.*, 279 Ill. App. 3d 108, 120 (Ill. App. Ct. 1996) (plaintiff doctor alleged that defendants engaged in a "five year campaign of harassment and intimidation against him" by falsely claiming that he was incompetent, revoking his privileges, and constantly berating him in front of hospital staff); *Khan v. Am. Airlines*, 266 Ill. App. 3d 726 (Ill. App. Ct.

1994) (defendants knowingly sold stolen airline ticket to plaintiff, causing him to be arrested and charged with theft, despite being aware that he was en route to his father's funeral), abrogation on other grounds recognized by *Velez v. Avis Rent A Car System, Inc*., 308 Ill. App. 3d 923, 928 (Ill. App. Ct. 1999); *Layne v. Builders Plumbing Supply Co., Inc*., 210 Ill. App. 3d 966, 973 (Ill. App. Ct. 1991) (defendant employer knowingly filed false police report against plaintiff employee, claiming that she threatened, harassed, and assaulted a co-worker)).  Moreover, even in her response, Ms. Douglas fails to describe specific conduct warranting liability, but instead merely cites to 92 paragraphs of her Amended Complaint.  (*See* Resp. at 7 (citing Amend. Comp. ¶¶ 7-99).)  At most, she argues that Ms. Lofton abused her position, created defamatory documents, made defamatory statements, and changed workplace rules as a basis for discipline. (*Id*. at 8.)  Ms. Douglas provides no legal basis for why such conduct rises to the level of intentional infliction of emotional distress.  The Court, therefore, dismisses Count V without prejudice.

**IV.      Joining of Future Claims**

Ms. Douglas also argues that the Court should deny the motion to dismiss to the extent it seeks dismissal of claims that she plans to join to this lawsuit after she exhausts her administrative remedies.  (Resp. at 10.)  The Court, however, can only evaluate the claims before it.  This argument, therefore, does not save her deficient claims from dismissal at this stage.  Ms. Douglas  may file a second amended complaint which includes any additional claims which the facts support.

**V.      Motion to Strike**

Defendants seek to strike Paragraphs 16-23, 33-37, and 41-59 (and corresponding exhibits) of Ms. Douglas' Amended Complaint because they contain allegations unrelated to her claims.  (Mot. at 11.)  The Court grants this request.

Paragraphs 16-23 and corresponding Exhibits A, B, and C include allegations about Nicolas Senn High School's student enrollment and budgets for 2011 through 2013, estimates of the number of teachers at Nicolas Senn High School for 2012 and 2013, and allegations relating to why the school laid off other teachers during the 2011 and 2012 fiscal years and hired additional teachers in 2013.  These allegations are irrelevant and immaterial to Ms. Douglas' remaining claims – FMLA retaliation, assault, and disparate treatment under the Fourteenth Amendment.  Ms. Lofton argues that these paragraphs "serve as evidential links in the chain of inference that similarly situated employees outside the protected class received systematically better treatment."  (Resp. at 13-14.)  This argument, however, is misguided as these statistics regarding enrollment and the hiring and firing of teachers do not establish any such link.  Indeed, Ms. Lofton does not provide any factual allegations about whether the teachers referenced were similarly situated to her or if they took any FMLA leave or if Ms. Lofton assaulted them.  The Court, therefore, strikes Paragraphs 16-23 and Exhibits A, B, and C.

The allegations in Paragraphs 34-37 and 41-45 and Exhibit E[5] relate to other teachers against whom Defendants allegedly discriminated.  Paragraphs 34-37 describe how Ms. Lofton treated a teacher named Maurice Aberman, who suffered from hearing loss and who Ms. Lofton

---

[5] Ms. Douglas states that Exhibit G provides all of the evaluations of other teachers she could obtain.  (Amend. Compl. ¶ 34.)  Exhibit G, however, does not contain any evaluations. Exhibit E contains evaluations.

terminated in June 2011.  (Amend. Compl. ¶¶ 34-37.)  Paragraphs 41-45 describe Ms. Lofton's treatment of another teacher, Peter Nicolas, whom Defendants allegedly laid off for economic reasons.  (Amend. Compl. ¶¶ 41-45.)  Paragraphs 46-59 and Exhibits M and N describe how Ms. Lofton allegedly discriminated against another teacher, Deidre Robertson, regarding the reporting and investigating of alleged child abuse.  (Amend. Compl. ¶¶ 46-59.)  All of these allegations and exhibits pertain to actions taken against other teachers that are wholly unrelated to the allegations Ms. Douglas makes, other than that they all include alleged discrimination – though of very different kinds – by Ms. Lofton.

Ms. Lofton argues that these allegations regarding other teachers are relevant because of "the similarity of the abuse of position each suffered."  (Resp. at 15.)  These paragraphs, however, do not include any factual allegations indicating that they received similar "abuse" or were similarly situated.  At most, Ms. Lofton has alleged that Mr. Aberman also suffered from medical problems, namely hearing loss.  She does not, however, allege that Mr. Aberman, Mr. Nichols, or Ms. Roberston, sought FMLA time off.  Indeed, she does not even allege that these teachers qualified for FMLA protection.  Nor does she allege that Defendants discriminated against these teachers in any manner similar to Ms. Douglas' allegations of discrimination – discipline, suspension, defamation, harassment, or assault.  Ms. Douglas' argument that these allegations help establish willful and wanton conduct also fail as they do not, as she argues, show a relevant pattern of "fabricating evidence, asking others to corroborate factually deficient video, and persecuting individuals based on the purported corroboration."  (Resp. at 15.)  The Court, therefore, also strikes Paragraphs 34-37 and 41-49, and Exhibits E, M, and N without prejudice.

**CONCLUSION**

For the forgoing reasons, the Court dismisses Counts I and V without prejudice and Count III with prejudice.  The Court also strikes without prejudice Paragraphs 16-23, 34-37, and 41-49 and Exhibits A, B, C, E, M and N of Ms. Douglas' Amended Complaint.  Pursuant to the Court's concurrently issued Order, Ms. Douglas may file a second amended complaint, consistent with this opinion, on or before July 1, 2013.

**DATED: May 17, 2013**

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**