# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| VALERIE DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12 C 8592 |
| | ) | |
| SUSAN A. LOFTON, in her individual | ) | |
| capacity and in her official capacity as | ) | |
| Principal of Nicolas Senn High School, | ) | |
| and the Board of Education of Chicago, d/b/a | ) | |
| the CHICAGO PUBLIC SCHOOLS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On February 23, 2013, Plaintiff Valerie Douglas ("Ms. Douglas") filed a six-count

Amended Complaint against Defendants Susan Lofton ("Principal Lofton"), in her individual

and official capacities as Principal of Nicolas Senn High School ("Senn") and the Board of

Education of Chicago ("the Board") ("Defendants"), alleging violations of the Family Medical

Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.,* as well as state law claims.  On May 17, 2013,

the Court dismissed Counts I and V of the Amended Complaint without prejudice and Count III,

a state law defamation claim, with prejudice.  The Court also struck without prejudice

Paragraphs 16-23, 34-37, and 41-49 and Exhibits A, B, C, E, M, and N of Ms. Douglas'

Amended Complaint.  (*Id.*)  The Court presumes familiarity with its May 17, 2013

Memorandum, Opinion, and Order.

On July 3, 2013, Ms. Douglas filed an eleven-count Second Amended Complaint

("SAC") asserting six federal claims and five state law claims.  Defendants move to dismiss

Counts I, IV through VII, and IX through XI of the SAC pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim and to strike paragraphs 10-12, 14-20, 23 and 51, and Exhibits B, C, and H of Plaintiff's SAC pursuant to Rule 12(f).

For the following reasons, the Court grants in part and denies in part Defendants' motion to dismiss. Also, the Court, in its discretion, grants Defendants' motion to strike in its entirety. Because Ms. Douglas has yet to exhaust her employment discrimination claims as alleged in Counts IV through VI, the Court stays this lawsuit until Ms. Douglas has exhausted these claims. *See Palka v. City of Chicago,* 662 F.3d 428, 437 (7th Cir. 2011). Once Ms. Douglas exhausts her administrative remedies and the Court re-opens this lawsuit, she may file her Third Amended Complaint in accordance with this order.

## BACKGROUND

Plaintiff Valerie Douglas, a fifty-seven year old African-American female, worked as a teacher for the Chicago Public Schools for 27 years. (R. 57, SAC ¶¶ 4, 7.) Starting in 2010, Defendant Susan Lofton became Principal of Senn High School where Ms. Douglas was teaching. (*Id*. ¶ 8.) Ms. Douglas' employment is subject to a collective bargaining agreement ("CBA") between the Board of Education, the City of Chicago, and the Chicago Teacher's Union, Local No. 1. (*Id*. ¶ 13.)

In her SAC, Ms. Douglas alleges that during a meeting at Senn called by the administration on April 27, 2011, Principal Lofton "suddenly and aggressively moved across the table towards" her. (*Id*. ¶ 26.) As a result, Ms. Douglas alleges that she developed a severe headache. (*Id*. ¶ 27.) Later that day, Ms. Douglas left before school was over after completing the required paperwork. (*Id*.) Ms. Douglas was absent from April 27, 2011 through May 6, 2011. (*Id*.) On April 28, 2011, Ms. Douglas' doctor diagnosed her as having had a mild heart attack. (*Id*. ¶ 29.) Another treating physician diagnosed Ms. Douglas with post-traumatic stress

disorder and severe depression.  (*Id*.)  Ms. Douglas asserts that she contacted the Board and Senn

every day that she was absent during this time period.  (*Id.* ¶ 30.)

On May 9, 2011, Ms. Douglas returned to work, after which she filed a grievance with

her union steward about Principal Lofton's conduct.  (*Id.* ¶ 31.)  Further, Ms. Douglas alleges

that she placed her medical note from her health care provider on file.  (*Id*.)  On that same day,

Principal Lofton called Ms. Douglas into her office and gave her a Notice of Pre-Disciplinary

Hearing.  (*Id*. ¶ 32.)  The notice included the following alleged infractions: (1) leaving the

classroom without permission; (2) negligently supervising students; (3) inattention to duty; (4)

insubordination; (5) not following rules in behaviors that disrupt; (6) engaging in an act that an

employee knew or should have known would compromise the integrity of the testing process;

and (7) violating school rules.  (*Id*.)  As a result of the May 9, 2011 notice, "Douglas received a

warning resolution that identified her as having interfered with testing protocols and negligently

supervising students."  (*Id*. ¶ 48.)  On June 20, 2011, Ms. Douglas participated in an appellate

hearing regarding her discipline at the Board's office.  (*Id.* ¶ 44.)  In the end, Ms. Douglas served

a suspension day on September 13, 2011 related to this discipline.  (*Id*. ¶ 54.)

In addition, Ms. Douglas alleges that from September 14, 2011 until November 9, 2011

she was absent and under a doctor's care.  (*Id*. ¶ 55.)  After Ms. Douglas returned to work,

Principal Lofton had a pre-disciplinary meeting with her on Wednesday November 16, 2011

regarding Ms. Douglas' failure to enter student grades and complete other work while Ms.

Douglas was on leave.  (*Id*. ¶ 60.)  Ms. Douglas interpreted a statement by Principal Lofton

during that meeting – "we have to hurry up and get you" – as a threat that she would be fired.

(*Id.*)  After this meeting, Ms. Douglas spoke to her union steward who "agreed that the statement

was a notice that Douglas was going to be fired and advised Douglas to make arrangements for

retirement." (*Id.* ¶ 61.) Thereafter, on December 2, 2012, Principal Lofton placed Ms. Douglas into the "E3 process" which provides mentorship and assistance. (*Id.* ¶ 63.)

Ms. Douglas further alleges that Principal Lofton entered her classroom on January 15, 2012, "mumbled a threat, and sat down." (*Id.* ¶ 66.) Ms. Douglas also asserts that "[o]verwhelmed by the situation, Douglas experienced a fainting episode and panic attack." (*Id.* ¶ 67.) Further, Ms. Douglas maintains that emergency medical personnel then took her to the hospital. (*Id.*) Thereafter, the Board sent Ms. Douglas a letter notifying her that if she did not return to work within ten days, the Board would terminate her for job abandonment. (*Id* ¶ 70.) "Under doctor's care and advice, Douglas retired effective February 17, 2012." (*Id.* ¶ 71.)

Relevant to the present motion to dismiss are the following claims: (1) an interference claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a) (Count I); (2) a state law tortious interference with contractual relations claim (Count VII); (3) a state law negligent supervision claim (Count IX); (4) a state law intentional infliction of emotional distress claim (Count X); and (5) a state law intentional spoliation of evidence claim (Count XI).

## LEGAL STANDARDS

### I.    Rule 12(b)(6) Motion to Dismiss Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations

must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570).

"In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012). Also, "a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses," but "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Independent Trust Corp. v. Stewart Info. Serv. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012).

## II.     Rule 12(f) Motion to Strike Standard

"Rule 12(f) provides that a district court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.,* 554 F.3d 1133, 1141 (7th Cir. 2009) (quoting Fed. R. Civ. P. 12(f)). Motions to strike are appropriate if they serve to expedite litigation. *See Heller Fin., Inc. v. Midwhey Powder,* 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken if matter bears no possible relation to controversy). District courts have considerable discretion to strike allegations under Rule 12(f). *See Delta,* 554 F.3d at 1141-42.

## ANALYSIS

### I.     Motion to Dismiss

#### A.     Count I – FMLA Interference Claim

The "FMLA entitles an employee to twelve weeks of leave every twelve-month period if she is afflicted with 'a serious health condition' which renders her unable to perform her job." *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009) (quoting 29 U.S.C. § 2612(a)(1)(D)).  The FMLA "further provides that employers may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act].'"  *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011) (citation omitted).  To ultimately prevail on her FMLA interference claim, Ms. Douglas must show that: (1) she was eligible for FMLA protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.  *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 780 (7th Cir. 2013); *see also Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012) ("An interference claim requires proof that the employer denied the employee FMLA rights to which she was entitled.").

In her SAC, Ms. Douglas alleges that after she was diagnosed with having had a mild heart attack and severe depression, she informed her employer that she needed to take leave under the FMLA.  She further alleges that despite her request, Defendants interfered with her FMLA rights because they did not count her absences from September to November 2011 as FMLA days, but instead counted the days as suspension or unpaid days.  (SAC ¶¶ 81, 80.)

In the Court's May 17, 2013 Memorandum, Opinion, and Order, the Court concluded that Ms. Douglas' allegations regarding her suspension did not support a claim for interference under

the FMLA.  Specifically, the Court noted that Ms. Douglas received FMLA time off on multiple

occasions, but also that Defendants had suspended her during the relevant timer period:

> According to the letter she attached as Exhibit U[1], dated July 29, 2011, Chicago Public
> Schools suspended her for two days in September, October, November, and December
> each.  Plaintiff, therefore, received this suspension approximately four months after her
> first leave of absence, which ended in March 2011, and two and a half months after the
> second FMLA leave, which ended May 9, 2011.  Moreover, she took FMLA leave after
> receiving this notice of suspension, specifically from "September 14, 2011 through
> September 23, 2011" and "from late September through November 7, 2011."  She has,
> therefore, not sufficiently alleged that Defendants took actions which interfered with her
> rights or discouraged her from exercising her rights, even when making all reasonable
> inferences in her favor.

(MTD Op. at 7-8 (internal citations omitted).)  In her SAC, Ms. Douglas has not rectified her

allegations or given further details as to how Defendants interfered with her FMLA rights for the

September to November 2011 time period in question.  Thus, the Court grants Defendants'

motion to dismiss this claim without prejudice

### B.      Count VII  - Tortious Interference with Contractual Relations

Next, Defendants move to dismiss Ms. Douglas' state law claim of tortious interference

with contractual relations as alleged in Count VII of the SAC.  To establish a tortious

interference with contract claim under Illinois law, a plaintiff must show: "(1) the existence of a

valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness

of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the

contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5)

damages." *Hess v. Kanoski & Assoc.*, 668 F.3d 446, 454 (7th Cir. 2012).  In her SAC, Ms.

Douglas alleges that Defendant Lofton induced the Board to break its contractual relationship

with Ms. Douglas.  (SAC ¶¶ 13, 116.)

---

[1]      Exhibit U to the First Amended Complaint is Exhibit G to the SAC.

Here, Defendants argue that Ms. Douglas' claim fails because there was no contractual relationship between her and the Board. Indeed, the CBA – which Ms. Douglas alleges is the contract at issue – was between the Chicago Teachers Union and the Board. (*Id.* ¶ 13.) Ms. Douglas nevertheless sets forth three exceptions that she asserts allow her to maintain her claim: (1) Illinois courts recognize an exception in an employment relationship; (2) the CBA contains language giving her the right to enforce the CBA; and (3) she is an intended third-party beneficiary.

Ms. Douglas, however, does not provide supporting legal authority for the first exception because the cases she cites pertain to the Illinois tort of interference with prospective economic advantage. Likewise, Ms. Douglas fails to identify what language of the CBA gives her rights to enforce the CBA. Instead, she provides part of the agreement that states that the CBA "shall not be construed to deny any teacher or bargaining unit member or to the board the right to resort to legal proceedings." Also, under the third deception, the Court could not find any legal authority, nor does Ms. Douglas cite any, that allows for a plaintiff/third-party beneficiary to state a tortious interference with contract claim.

Moreover, Ms. Douglas has failed to sufficiently allege her claim under *Twombly* and *Iqbal* because she has not alleged any provision of the CBA which the Board breached. She merely states that "Lofton induced the Board to break the contractual relationship" without providing any factual allegations explaining what constituted the breach. The only provision of the CBA which she expressly describes in the SAC is one which provides that "teachers are to receive their class schedules before June 1 in the summer before the school year begins. Those schedules remain in effect for the entire school year." (SAC ¶ 13.) This provision does not relate to her tortious interference claim which, according to Ms. Douglas, relates to Defendants'

interference "with Plaintiff's tenured teacher position." (Resp. at 7.)  The Court, therefore,

dismisses Count VII with prejudice because Ms. Douglas was not a party to the CBA and has

failed to identify a proper exception that applies under the circumstances.[2]

### C.    Count IX - Negligent Supervision

Defendants also argue that the Tort Immunity Act immunizes the Board from liability for

negligent supervision as alleged in Count IX of the SAC.  Section 2-201 of the Tort Immunity

Act states:

> Except as otherwise provided by Statute, a public employee serving in a position
> involving the determination of policy or the exercise of discretion is not liable for an
> injury resulting from his act or omission in determining policy when acting in the
> exercise of such discretion even though abused.

745 ILCS 10/2-201.  Ms. Douglas does not contest that the Board is a local public entity under

the Tort Immunity Act.  *See* 745 ILCS 10/1-206.  The parties also agree that Section 2-201

immunizes public employees for liability resulting from discretionary policy determinations.

Defendants' arguments, however, fail to recognize that Ms. Douglas has not alleged

conduct that is inherently discretionary, such as hiring and firing decisions, or conduct that

involves a determination of policy.  Instead, Ms. Douglas alleges that the Board failed to

supervise Principal Lofton because the Board knew that she had a history of assaulting teachers.

(SAC ¶ 123.)  She further alleges that as of October 2010 the Board knew that Principal Lofton

had made false allegations against other teachers.  (*Id.* ¶ 124.)  Because these allegations do not

involve the determination of policy or the exercise of discretion, Defendants have failed to

establish that the affirmative defense under the Section 2-201 of Tort Immunity Act applies

---

[2]      Because Ms. Douglas has failed to sufficiently state a tortious interference with contract
claim, the Court need not address Defendants' argument that Principal Lofton is immune under
the Tort Immunity Act.  Moreover, "a plaintiff is not required to plead facts in the complaint to
anticipate and defeat affirmative defenses."  *See Independent Trust Corp.,* 665 F.3d at 935.

under the circumstances. The Court therefore denies Defendants' motion as to Count IX of the

SAC.

### D. Count X – Intentional Infliction of Emotional Distress

In the Court's May 17, 2013 Memorandum, Opinion, and Order, the Court dismissed

without prejudice Ms. Douglas' intentional infliction of emotional distress claim. In the present

SAC, Ms. Douglas asserts almost word-for-word the same claim she asserted in her First

Amended Complaint except for one sentence. Specifically the Court previous concluded:

> Ms. Douglas does not specify how Principal Lofton harassed her or what type of "hostile action" Principal Lofton took against her. Such bare bones allegations are not sufficient to put Defendants on notice as to the conduct at issue. Ms. Douglas has offered only conclusory statements, rather than factual allegations, indicating that Principal Lofton's conduct was so extreme and outrageous to warrant liability.

(*Id*. at 21). The Court further stated:

> At most, she argues that Principal Lofton abused her position, created defamatory documents, made defamatory statements, and changed workplace rules as a basis for discipline. Ms. Douglas provides no legal basis for why such conduct rises to the level of intentional infliction of emotional distress.

(*Id*. at 22.)

In her SAC, Ms. Douglas has merely restated these deficient claims. At most, Ms.

Douglas has provided additional facts in the general factual section of her SAC, which she

incorporates into this count, such as that Principal Lofton committed assault, made false

allegations against Ms. Douglas, placed Ms. Douglas in a dangerous environment, and engaged

in taunting and harassing actions. She does not tie these additional facts to the conclusory

allegations contained in Count X. Furthermore, these facts are merely more vague allegations

regarding harassment and false allegations in line with those which Ms. Douglas alleged in her

First Amended Complaint. For the same reasons as noted in the Court's previous opinion, the

Court dismisses Count X without prejudice.

**E.      Count XI – Intentional Spoliation of Evidence**

In Count XI, Ms. Douglas claims that Defendant Lofton spoliated evidence, which is a

tort under Illinois law.  Ms. Douglas, however, fails to allege sufficient facts to state a spoliation

claim that is plausible on its face.  *See Iqbal*, 556 U.S. at 678.  Specifically, to set forth a claim of

spoliation of evidence in Illinois, a plaintiff must allege: "(1) the defendant owed the plaintiff a

duty to preserve the evidence; (2) the defendant breached that duty by losing or destroying the

evidence; (3) the loss or destruction of the evidence was the proximate cause of the plaintiff's

inability to prove an underlying lawsuit; and (4) as a result, the plaintiff suffered actual

damages." *Martin v. Keeley & Sons, Inc.*, 365 Ill. Dec. 656, 661, 979 N.E.2d 22 (Ill. 2012).

Defendants contend that Ms. Douglas has not sufficiently alleged that they had any duty to

preserve any evidence.  Indeed, "[t]he general rule in Illinois is that there is no duty to preserve

evidence." *Id*; *see also Trannel v. Prairie Ridge Media, Inc.,* 370 Ill.Dec. 157, 166, 987 N.E.2d

923, 932 (2d Dist. 2013).

The Illinois Supreme Court has a two-prong test a plaintiff must meet to establish an

exception to this general rule.  *See Martin,* 365 Ill. Dec. at 661 (citing *Boyd v. Travelers Ins. Co.*,

209 Ill. Dec. 727, 731, 166 Ill. 2d 188, 652 N.E.2d 267 (Ill. 1995)).  "Under the first, or

'relationship,' prong of the test, a plaintiff must show that an agreement, contract, statute, special

circumstance, or voluntary undertaking has given rise to a duty to preserve evidence on the part

of the defendant." *Id.*  "Under the second, or 'foreseeability,' prong . . . plaintiff must show that

the duty extends to the specific evidence at issue by demonstrating that a reasonable person in

the defendant's position should have foreseen that the evidence was material to a potential civil

action." *Id.*  Viewing the allegations in a light most favorable to Ms. Douglas, she fails to

sufficiently alleged enough facts supporting either prong.

11

Regarding the "relationship" prong, Ms. Douglas did allege that "Lofton agreed to review and retain the video." (SAC ¶ 37.) Although Ms. Douglas does not explain precisely what "video" she is referring to or when this communication occurred, context permits the Court to infer that Ms. Douglas refers to a video of the school hallway on April 26, 2011. Drawing all inferences in Ms. Douglas' favor, she has alleged that Ms. Lofton voluntarily assumed a duty to preserve this video evidence.

Regarding the "foreseeability" prong, Ms. Douglas has not alleged that any duty extended to "specific evidence at issue" by showing that Defendants should have foreseen the evidence was material to a potential civil action. Notably, Ms. Douglas' allegations merely state that she "asked Lofton verbally to preserve evidence for future litigation, and again in a letter." (SAC ¶ 136.) Ms. Douglas does not cite to any such letter nor explain what "evidence" she asked Principal Lofton to preserve. If Ms. Douglas' allegations relate to the April 26, 2011 video evidence which she previously sought in her motion for a protective order, she has not sufficiently alleged that Defendants destroyed that evidence. Ms. Douglas stated that "during the early interactive process, Lofton filed with this Court a response that indicated that 'there was no video.'" (*Id.* ¶ 137.) In response to Ms. Douglas' motion for a protective order, which included a request to preserve certain video evidence, Defendants stated that, because Ms. Douglas "has not been an employee at Senn in over 14 months [] there is no video footage available related to her alleged adverse actions, other than footage of the date that Plaintiff requested to be taken to the hospital." (R. 39 at 8.) Also, Defendants stated that "Defendant Lofton has this footage in her possession and it will be given to Plaintiff during discovery." (*Id.*) Ms. Douglas, therefore, has not identified any specific evidence which Principal Lofton destroyed as she represented to

the Court that she has the video from April 2011. Hence, the Court dismisses Count XI without prejudice.

## II. Motion to Strike

Defendants move to strike paragraphs 10-12, 14-20, 23 and 51, and Exhibits B, C, and H as redundant and immaterial. *See* Fed.R.Civ.P. 12(f). For the following reasons, the Court grants Defendants' motion to strike in its entirety.

### A. Paragraphs 10-12, 14-20, 23, and 51

Paragraphs 10-12, 14-20, and 23 contain allegations regarding Senn and, in particular, the Achievement Academy within Senn, with particular focus on whether the Achievement Academy was going to close. These allegations also include references to other teachers. Ms. Douglas argues that these paragraphs "provide necessary factual background to the claims and theories asserted." (Resp. at 23.) These allegations, however, are irrelevant and immaterial to any of Ms. Douglas' claims which do not relate to the Achievement Academy or its status. Ms. Douglas claims that these allegations show that Principal Lofton wanted to get rid of Ms. Douglas and other older teachers and attempted to accomplish this by closing the Achievement Academy. The allegations do not support such an inference, nor is such an inference, particularly regarding other teachers, pertinent to the claims Ms. Douglas pursues here. The Court, therefore, strikes paragraphs 10-12, 14-20, 23 and 51.

### B. Paragraph 51

Paragraph 51 describes Ms. Douglas' schedule and class size for the fall of 2011, including a footnote that over half the students in her class were suspended or expelled over the course of the school year. (SAC ¶ 51.) Ms. Douglas contends that this paragraph "inform[s] the Court of the environment that the Principal Lofton created for Plaintiff." (Resp. at 14.) She does

not explain, however, how any allegations of the environment, particularly with regards to the type of students Ms. Douglas taught, relates to any particular claim she asserts. She further offers inapposite arguments with no basis in the SAC that Principal Lofton allowed teachers with less seniority to refuse to enter the classroom with these students and disciplined other minority teachers for contacting security when students misbehaved. These arguments are wholly irrelevant to Ms. Douglas' claims and are not related to paragraph 51. Therefore, the Court grants Defendants' motion to strike paragraph 51.

### C.     Exhibit B

Exhibit B is a list of "similarly-situated employees who received more favorable treatment," a list of age-based discrimination evidence, and a list of race-based discrimination evidence. (R. 57-5, Ex. B.) In other words, Exhibit B is essentially additional allegations of conduct relegated to an exhibit   The Court grants Defendants' motion to strike Exhibit B as surplusage. *See Kadamovas v. Stevens,* 706 F.3d 843, 844 (7th Cir. 2013). Because the Court is staying this matter until Plaintiff exhausts her administrative remedies as to her federal employment discrimination claims, when the Court re-opens this matter, Plaintiff should allege sufficient facts – in the body of her Third Amended Complaint – concerning the similarly situated employees, if any such allegations are relevant to her newly alleged claims.

### D.     Exhibits C and H

Similarly, Defendants move to strike Exhibits C and H. In her SAC, Ms. Douglas fails to cite to Exhibits C or H. Exhibit C appears to be an electronic communication referenced in paragraph 19 which states: "On December 16, 2011, Douglas received notice from assistant principal Carter Carey that she had achieved 100% compliance with all record keeping requirements." (SAC ¶ 19.) Exhibit H is a notice of disciplinary action with a hearing date of

May 20, 2011.  Plaintiff need not make an evidentiary showing at this procedural posture, and thus any these exhibits merely add clutter to Ms. Douglas' allegations.  *See Heller Fin., Inc. v. Midwhey Powder Co., Inc. ,* 883 F.2d 1286, 1294 (7th Cir. 1989).  The Court thus grants Defendants' motion to strike Exhibits C and H.

## CONCLUSION

The Court grants Defendants' motion to dismiss in part and denies it in part.  The Court stays this lawsuit until Plaintiff has exhausted her administrative remedies as to Counts IV through VI.  The Court grants Defendants' motion to strike in its entirety and strikes paragraphs 10-12, 14-20, 23 and 51, and Exhibits B, C, and H.

**DATED:**  November 6, 2013

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**